And we'll call up our next case, Williams v. Medley OpportunityFund. Appellate numbers 19-2058 and 19-2082. May it please the Court, Sarah Harris for Appellants Curry, Nye, and McGowan. I would like to reserve two minutes for rebuttal. That'll be granted. Thank you. I'll address the delegation clause, and my co-counsel will address plaintiff's prospective waiver argument. So if we have other questions we want to ask you, we should wait for him? If it's not delegation, we should wait for your adversary? Sure. Or your colleague, I said? Sure. Or we can ask you? Feel free to ask whatever you like. Okay. This Court should reverse because the parties agreed to an unambiguous delegation clause saying that a AAA or JAMS arbitrator would resolve all challenges to the enforceability of the arbitration. But if your adversary challenged the delegation clause as being unenforceable because the entire agreement is unenforceable, doesn't the Court first need to look at whether it's an enforceable delegation clause? Yes. So the Court certainly under Singham-McDonald does need to say, is this an enforceable delegation clause? We agree with that. There's the two-step process. How is this case in that regard any different than the Second and the Fourth Circuit cases? So the Second Circuit in Gingras and the Fourth Circuit in Hayes Footnote 1 only considered whether the first step of this process, which was, have plaintiffs actually made a specific attack on the delegation clause? Neither of those courts addressed the critical second step under this Court's precedence, which is, does the Court actually think that the delegation clause is unenforceable? And under this Court's precedence, as well as precedence from the Fourth Circuit and Ninth Circuits, it is very clear the law that governs questions of enforceability like this one is the FAA and federal law. But didn't Gingras and Hayes find the agreements unenforceable, ultimately? Ultimately, because they ignored the delegation clause. So they just sort of assumed that alleging that there was a problem of prospective waiver grounds was enough to bypass the delegation clause, and then ultimately said there was a prospective waiver problem. But again, I think under Singham-McDonald, in this Court's precedence, that's not enough. The Court would actually have had to take the step in both of those cases of sitting down and saying, does the challenge that plaintiffs have made on prospective waiver grounds also impugn the validity of the delegation clause? Isn't that going to affect what Gingras and Hayes did? No, because they didn't consider whether there was a separate body of law that applies to the delegation clause, and the answer to that is plainly yes. When you are arbitrating under the FAA, you are opting into a set of rules about whether your arbitration agreement is enforceable under Section 2. That is the body of law that sets the backdrop, the sort of rules of the road, for whether you have an enforceable agreement. And that's Rent-A-Center? That's both Rent-A-Center, but also this Court's precedent in Becker. That's the Rhoda McLarty case in the Fourth Circuit. That's Kate Flattery in the Ninth Circuit. It is truly well established that a separate body of law governs the question of whether you have an enforceable arbitration agreement. So in court or in arbitration with James or AAA arbitrators, the same body of law is going to govern whether plaintiff's prospective waiver challenge is meritorious or not. That's the FAA. Was there any explanation in Hayes as to why they jumped immediately? They didn't give a reason. They don't give a reason. It's about a 40-word footnote, and I think it's also important that the Fourth Circuit later in Miniland actually says they follow the same two-step process as this Court, which is you have to make specific allegations, and then the Court actually has to decide if the delegation clause has an issue. And Miniland actually characterizes Hayes as only involving the sort of specific allegation first step, which, again, we agree the plaintiffs here have made specific allegations, but that doesn't get them home free under this Court's precedence or under many other precedents, and I think Miniland makes clear that Hayes sort of can't be read the way they might want to. But if we apply McDonald, and if you concede it as you need to based upon this record, they challenge the delegation clause, McDonald then says you can then determine whether that delegation clause is unenforceable using the same arguments that are being raised to challenge the entire agreement. Correct. I think McDonald accurately states there are certain arguments that go to the validity of both agreements, and McDonald is a good example of one that goes to both. It's an illusory form. So you have arbitrators who just can't do anything at all. They can't decide whether the agreement's enforceable because there's no arbitration, and they certainly can't proceed to do anything else because, again, there is no arbitration provided under the Cheyenne River Sioux law. And here it's very different. The arbitrators here can very easily do the same thing federal courts would do, which is say he is very prospective waiver problem, applying the same body of law that we are all fighting over. Not if the arbitrator is only allowed to apply tribal law. If they are duty-bound to apply only tribal law, they won't turn to prospective waiver law. So aren't they intertwined? Well, no, because in order to reach that conclusion, you would have to override the consensus of circuits, including this one, that you're reading in the general choice of law provision in the agreement to affect arbitrability, and that is something this court's precedent, Becker and other cases, and Roto McLarty and Kate Flattery say you should not do. So there is a separate body of law. Well, how can we have back-end review here when the allegations of the agreement irrevocably say that it's subject to tribal law? Sorry, how do you have back-end review of the arbitration? Yeah, so that regardless of whether you're looking at the arbitration clause or back-end review, the review here is subject to tribal law. But the review here, again, that is the governing law provision for the substance of the proceedings. At this first stage, it is very clear that arbitrability law really is governed by federal law and that the arbitrators would be applying what the same thing the federal courts do in looking to cases like Mitsubishi and everything that is in the FAA itself. And if there were a problem with that on the back-end, FAA Sections 10 and 11 obviously provide for challenges. Not according to this agreement. This agreement says we're going to a tribal court, and the tribal court's authority to review is whether or not the decision is consistent with tribal law. So you're not in FAA review according to the terms of the agreement? May I answer? Yes, I'm sure. And then I'm sure Judge Stryka might have a question. Okay, sure. I'm happy to answer. But the answer in that is twofold. First of all, we don't see – again, when you opt into the FAA, you are both opting into judicial review under the FAA itself. That's what Hall Street says. And Hall Street leaves it open. You can also have other available leases of review. And that is how we read the agreement. Because, again, the agreement both says that there is going to be tribal court review, which I think is consistent with Hall Street, but also says this is an agreement. It's invoking the FAA by saying the transaction involves interstate commerce. So reading those provisions together, I don't think there's an issue here with that. And even if there were, again, I think under Henry Schein, that wouldn't affect our threshold inquiry into is there a valid and enforceable delegation clause. Is federal law mentioned in the agreement? Federal law is mentioned in the agreement. And my colleague can certainly get to that in perspective. And how is it done? Because there are some references in the agreement that don't mention federal law. So if you look at JA-292, the governing law provision expressly states that the agreement shall be governed by both tribal law and such federal law as is applicable under the Indian Commerce Clause. And other provisions of the agreement are harmonious with that because they say tribal law and consistent with the terms of the agreement. And so that is one of the terms of the agreement. So I think it all hangs together. Some of the cases that we've been talking about use the word transaction instead of saying applicable. Is there a distinction between those two concepts? There certainly is. And you can continue to answer Judge Serka's question and Judge Cowell's question. Sure. But I do want to just flag that my colleague is happy to address all the perspectives we requested. Okay. And you can say I prefer him to answer, and Judge Serka will let you know whether he still wants to hear from you. Okay. I'm happy to have it later. Sorry? You don't have to answer that. Okay. I'm happy to do whatever you like, but I don't want to encroach too much on my colleague. Ultimately, tribal law is the decision, the rule of decision, correct? It is the rule of decision for what law is. Well, I think we would say no. Certainly not with respect to the Delegation Clause and also not with respect to the substance of the dispute because both tribal law and federal law is applicable under the Indian Commerce Clause. Well, this is very similar to the Second and the Fourth Circuit, where they mentioned federal law, but the ultimate decision-maker is a tribal adjudicator, correct? But the ultimate decision-maker here is actually the arbitrator. There is a separate judicial review provision that is sort of a benefit above and beyond what the FAA provides, and that's the sort of enforcement at the back end. But I think the way that this all gets conflated together is very different from the agreements that you made. What points a tribal judge or whatever he's referred to as or she referred to as? The federal government. This is a tribal court established under the Code of Federal Rights. This is not an Article III judge. It's not even an Article I judge, is it? I'm not sure if it's an Article I judge, but it is a judge appointed pursuant to – I think it probably would – well, I mean, I think Congress can set this up under the Indian Commerce Clause and its plenary power, and the judges who are involved are the ones who adjudicate tribal law issues throughout the federal government. But they don't adjudicate federal law at the tribal court. Well, they certainly could in this case. Okay. Okay. Good morning, Your Honors. May it please the Court, Daniel Volchok for Redstone. I'd like to reserve two minutes for rebuttal if I could. Does that get you up to your 15? Yes, ma'am. So if that's two minutes, you've got six. Go. Yes, thank you. I want to start with some of the questions that were asked. This case is not like the Second and the Fourth Circuit cases because the contracts have materially different language. The contracts in those cases expressly disclaimed the applicability of any federal law. They said – each contract said it was governed solely – that was the word that each contract used – solely by the law of the relevant tribe. Okay. So let's talk about your contract. Such federal law is applicable under the Indian Commerce Clause. That says in the governing law provision. Would you agree that is different than the laws of general applicability? No, Your Honor. Well, yes, Your Honor. Yes, but it is not different, and this is the key point as to why there is no prospective waiver. It is not different than the law that would apply in litigation. If plaintiff's claims are not sent to arbitration and were litigated in court, the only laws that the district court and then ultimately this court could apply would be such federal law as is applicable under the Indian Commerce Clause because – That's a law of general applicability. It most assuredly is a law applicable under the Indian Commerce Clause, Judge Schwartz. The only court – What do you have? Can you give me a case that's – Will Hite. It's cited in the brief. Will Hite from the District of Montana. But the general point is the Supreme Court has said – this is FPC, Federal Power Commission v. Tuscarora – that laws of general applicability apply to tribes. But are they – do they apply as – because I'm in your language – as applicable under the Indian Commerce Clause, not some other – I just want to know yes or no. Is that your position? Yes. Now let me ask you another question. Stay away from the governing law provision for a moment. Cruise with me to the arbitration clause. And then I want you to – actually, let's go to paragraph – Section 24. Section 24. By signing below, you consent to dispute resolution provision, including the provision consenting to and limiting disputes to tribal law and tribal courts. How is it that a reader should think that they can also bring disputes outside of tribal law simply because of the governing law provision? How do you reconcile that conflict? The Supreme Court has said repeatedly that when you have provisions that talk only about a certain foreign source of law, whether it is the law of a state, the law of another country, the law in this case of a tribe, without an express reference to federal law, that creates an ambiguity. The way it's put in Mr. Curry's brief is saying yes to tribal law is not the same as saying no to federal law. So it creates an ambiguity. And Supreme Court precedent is clear. This is the Weimar-Seguros case. This is the Pacific Air Health Systems case. When there is an ambiguity, the required course is to compel arbitration rather than assume that the arbitrator will resolve the ambiguity in a way that would violate the prospective waiver. If you look at the arbitration agreement, though, it keeps repeatedly saying arbitrators apply tribal law, can only award remedies permitted under tribal law. The arbitration award must be consistent with tribal law. The tribal court can only confirm things that's not based on error under tribal law. Your Honor, with respect, you did what plaintiffs do in their brief repeatedly, which was insert the word only when it is not there. If I use the word only, I stand corrected. I'm reading the language from your agreement, and my question is, why isn't that sufficient for the reader to understand as a matter of law that the only law that can apply in arbitration, and I deliberately used the word only there, is tribal law. How does it allow the introduction of, quote, such federal law as applicable under the Indian tribal clause, plus you also have language that says otherwise applicable to this tribe, capital T. I don't know what law that is. We know that you have to read contracts as a whole, and it's a cardinal principle of contract interpretation to give meaning to every clause and to harmonize the clauses whenever possible. The Mastro Buono case from the Supreme Court that we cite. So you have to look at every provision. There is the provision, we've talked about it, that adopts applicable federal law. All other provisions have to be read in harmony with that provision, and there is no provision in conflict with that provision. Other provisions. Could your adversary, and anyone else who had a claim in this case, bring a RICO claim and the Pennsylvania state consumer law claims? Yes and no. Yes to RICO, no as to the state law claims. Why? Because this governing law provision says it's governed by tribal law and such federal law as is applicable under Indian income, not state law, and that is entirely commonplace. You cannot have a prospective waiver violation because you have blocked state law. Every agreement that adopts the law of state X disclaims the law of 49 other states, and there is no basis to say that that is a prospective waiver violation. I understand your position on that. I understand the Supreme Court's language on that. I want to go back, if I could, to the question about back-end review. Four responses to that, Judge Cowen. Number one, it's waived. Plaintiffs never made that argument below. They cannot raise it for the first time on appeal. Number two. It's a matter of jurisdiction, though. That's the problem. I'm sorry, Judge Cowen. It's a matter of jurisdiction. It's not a matter of jurisdiction, Judge Cowen. It is a question of can the plaintiffs agree, can parties agree, to have their disputes heard first by an arbitrator and then in a particular court. There's no question that they can. The argument is waived. Number two. Plaintiffs never explain why it has to be a federal court. A tribal court can apply federal law, and there's no reason to think that it wouldn't. Number three. If you have to have a federal court, we have one here. Ms. Harris talked about it. The Court of Indian Offenses is a federal court created by federal law. Its judges are appointed to your question, Judge. I'm sorry, I don't remember who asked. By the Assistant Secretary of Indian Affairs, a federal official. They are paid from the United States Treasury. We have a federal court on back-end review, and those judges could apply federal law. There's no reason that they could. Are they going to apply hypothetically if there were an award and someone sought either to vacate or confirm before this court? Would they be applying Sections 9 through 11 of the FAA, or are they bound as the tribal court pursuant to your agreement to only adjudge the award based upon sufficiency of the evidence and no error under tribal law? It doesn't. The agreement does not. It would be under FAA 9 through 11, Judge Hortz, because the contract does not say only tribal law. It says you are entitled. Can we take that as a concession that if they go there, either side can use 9 through 11 as their review? Absolutely. That is probably an overlay from Hall Street, but there's no question that is our position, Judge Hortz. Thank you, sir. And tell me what the tribal law is with respect to the causes of action that they would like to bring, which are fraud and fraudulent or unconscionable contracts. The tribe's Consumer Financial Protection Ordinance requires lenders to comply with all applicable federal law that lists a whole host of them, including the Truth in Lending Act, the Fair Debt Collection Practices Act, the Electronic Funds Transfer Act. There is a robust body of tribal law here. The Consumer Financial Protection Ordinance is online. Moreover, it is available on the tribe's website. There is also a robust body of tribal, for example, corporate law, which has been filed in the Fourth Circuit. And again, we have federal judges who would be adjudicating any review of an award from an arbitrator. The agreement says, by way of example, we're not going to – the fact we might follow the guidance of TILA doesn't mean we're going to be bound by it, that we agree to be bound by it. No, no. I want to be clear, Judge Hortz, because plaintiffs say that. I read the agreement. That's what it read to me. So tell me what the language says. The agreement says the fact that we are undertaking these voluntary disclosures or, to give another example, the fact that an arbitration might happen within 30 miles of the borrower's home because it gives that option. Those facts by themselves do not allow for the application of any federal law. That doesn't change the fact that Paragraph 23 does allow for the application of federal law. Those other provisions don't do anything to negate the clear language in Paragraph 23, which has no analog in any case that has been decided in the Second Circuit, the Fourth Circuit, any other circuit they cite. The only exception is the Solomon District Court decision, which gave no answer to any of the arguments we make here, all of which were also presented to it. If I could follow up on Judge Serka's question, and I think the judge probably has additional ones as well. You drew our attention to the ordinance that exists at the tribe as setting forth certain law. Is there a private cause of action? Could the plaintiff say you are violating the ordinance's incorporation of these federal laws as a cause of action in an arbitration? More importantly, Your Honor, I very much don't want to skip over this because this is really where the rubber meets the road. They can bring their RICO claim. I understand that. I understand your position on that, and I read that in your brief. My question really has to do with these other types of fraud claims that Judge Serka, I think, was beginning to touch on. I didn't understand that ordinance necessarily to allow for private right of action. That is our understanding, but, Your Honor, the plaintiffs, in order to prevail on that question, would have to show unambiguously that it does not because if there is ambiguity, the Supreme Court tells us, Weimar Seguro, Pacific Air Health Systems, leave it to the arbitrator. Don't assume that the arbitrator is going to do something that would result in a prospective waiver violation. And if the arbitrator did so, and again, as Ms. Harris alluded to, when we say arbitrator, we're talking about AAA and JAMS, the gold standard here. And we know that arbitrations have occurred under this agreement, so this is in no sense an illusory form like we had in the majority of the cases that the plaintiffs rely on in urging this court to affirm. They don't have much to say about this language, Your Honor. And if I can answer one more of Judge Serka's questions, Judge Schwartz, with your permission, the question about transaction versus governed by. The difference in language between Jackson and the other cases they cite, there is a difference. When you have language that says, This agreement is made pursuant to a transaction involving the Indian Commerce Clause. What that says is, look, if there is some provision of law out there that makes Indian commerce a trigger, a prerequisite, a requirement, it's satisfied. We've got Indian commerce here. This transaction involves Indian commerce. That doesn't tell you what law governs. You could have that same provision, Judge Serka, that's in those other contracts, and you could also have a provision that says, This agreement is governed by law X, Y, and Z, and it could be anything you want. What was not in Gingras, Hayes, Dillon, any case they have cited other than the Solomon case, which was a district court case which gave no explanations. What was not in any contract they have cited is language expressly adopting the same body of federal law that would apply in litigation. Because we have that here, by definition, there is no prospective waiver violation. I'm happy to take any further questions. And I know you've conceded that RICO applies, but how do you get there? Because RICO is a law of Tuscarora, and it is a law of general applicability. Again, Wilhite, W-I-L-H-I-T-E, out of the District of Montana, cited in the briefs, said that RICO applies. The Supreme Court said when Congress passes a law of general applicability, it doesn't have to say this law applies to Native Americans. So why does your language, the drafters must have meant something when they said such federal law is applicable under the Indian Commerce Clause. Exactly. What is that conveying that's different than laws of general applicability? If you're telling me now that means there was laws of general applicability, I'll accept that, your position. But I don't understand why you draft the language this way, and I know you didn't draft it. I understand your argument. The Courts of Appeals have taken the Supreme Court's presumption from Tuscarora and adopted various tests to say which laws actually don't apply under the Indian Commerce Clause. And the most common test in the Ninth Circuit says, take, for example, it made three categories. But, for example, take a law that intruded on core sovereignty interests of Native Americans. So, for example, if somebody said, I think I'm a member of the tribe, and they're discriminating on the basis of race, you couldn't bring a race discrimination claim because it is core to tribe sovereignty to be able to determine their own membership. So what this language, and to go directly to your question, Judge Schwartz, is saying, federal laws that are not applicable under the Indian Commerce Clause, for example, any law that allowed such a lawsuit or any law that conflicted with a treaty, that's another exception in the Ninth Circuit's test, any law not applicable under the Indian Commerce Clause will not apply in arbitration. So you want us to substitute this language, say, and federal law of general applicability, unless one of the three exceptions in the name of the case begins with a C, I can't remember. I don't think any changes need to be made to the language that is here. I think the language that is here speaks directly to what the tribe was intending and directly to a prospective waiver violation. It says applicable federal law applies. The same laws that would apply if this case were litigated in federal court apply in arbitration. That is the definition of a prospective waiver. And final point, any argument they raise other than prospective waiver is waived because it was not made below. I'm happy to answer any further questions. Thank you very much. Thank you, Nate. Please accord Matthew Wessler for the appellees, Christina Williams and Michael Sturmel. In the past five years, federal courts, including multiple circuits and more than a dozen district courts, have reached a unanimous consensus that the type of tribal arbitration loan contract at issue here is invalid under the Federal Arbitration Act. That consensus reflects what I think is a basic understanding about these contracts, and they are all designed with the same goal in mind, and that's to eliminate a consumer's right to pursue relief for any federal claims, statutory claims, and to bar an arbitrator from awarding any remedies that are available under those statutes. How do you respond to your adversary's discussion that we were just having about the governing law provision in which, I'm going to shorthand it, they're basically telling us now laws of general applicability apply. Yes. Let me say two things about that, Your Honor. The first, and you heard my opposing counsel get up here and say none of the other contracts included language that incorporates this clause in the way that theirs does. And I think that's wrong. And we can lodge this. I'm happy to lodge this with the Court this afternoon. The contract at issue in Dillon, which was run through the same tribe, the Otoe Missouri tribe, as the contract that we have at issue here. And there is a governing law clause, very similar to the one that Your Honor just quoted, and I'm just going to read it for the Court. It says, governing law, this agreement and the agreement to arbitrate are governed by the Indian Commerce Clause of the Constitution of the United States of America and the laws of the Otoe Missouri tribe of Indians. It says this contract is governed by the Indian Commerce Clause. It is more than just it is a transaction pursuant to the clause. It is governed by it, which is another way of saying exactly what this contract says. It invokes the federal law that's applicable under that clause. Now, let me say the second thing I want to say about this is what does that mean? Because I think that's a core question in this case. Yes, as a general matter, laws of general applicability apply to the tribes. But the key question in this case, and the key reason that the Second Circuit had invalidated the contract in Gingras, and the Fourth Circuit has twice invalidated these contracts in Hayes and in Dillon, is the question isn't are these laws in some abstract way applicable to the tribe. The question is does this contract strip a consumer of the right to pursue relief under the statutes? And laws that are made applicable under the Indian Commerce Clause, as a general matter, don't carry with them the right for an individual to pursue claims under those statutes. The key difference is that tribes claim sovereign immunity as a result of the Indian Commerce Clause. And so a contract that is made pursuant to that clause, or laws that are promulgated by Congress under Article II, the Indian Commerce Clause, they eliminate a consumer's right to pursue relief on the basis of sovereign immunity. Are you changing your argument and saying it's an illusory form because it's no longer available because they're going to assert immunity? No, the argument is... Isn't the case law say once you... I thought I read a case that said if you agree to arbitrate, you've given up your right to pursue an immunity defense. I don't think you read a case like that. You heard the defendants make that concession. They say in their briefs very clearly, Oh, we moved to compel arbitration, and as a result, we don't have immunity for the claims. But on page one of their brief that they filed in the district court, their motion to compel arbitration, they say, and I'll get the quote for you, we do not waive our right to immunity as a result of filing this motion to compel arbitration. They do not give up that immunity. That's fine. Well, haven't they given it up? No, they haven't given it up. They haven't given it up. They expressly preserved it by bringing their motion to compel arbitration. Now, I think, Judge Sirica, what you're asking is can't they concede? Hey, you know what? We're now fine. You can sue us in arbitration and bring your RICO claims, whatever you want. Yes, now they are taking that position. But this court has been very clear in Nino v. Sterling Jewelers, as well as the Fourth Circuit in Hayes and Dillon and the Second Circuit in Gingras, that a later concession to be sued under these federal statutes does not save these arbitration agreements because the question at issue for this court and for all of these courts is whether, at the time of the making of the contract, they operated as a prospective waiver. And what this court said in Nino was that the motion to compel arbitration and a concession, it's not a negotiation for which parts of the contract you want to enforce. You take it as it comes. And if you read the contract, what the contract says is that it shall be governed by tribal law and that you don't get to sue us for federal claims except, and I should make this point, for a very narrow set of federal laws that are incorporated through the Indian Commerce Clause where Congress specifically abrogates a tribe's sovereign immunity. But counsel himself has said he acknowledges that, for purposes of litigation, that a RICO or federal claims could be adjudicated in the tribal proceeding. Yes. And if we were to write an opinion saying that this is so, then the tribe would be bound by that. Your Honor, the Fourth Circuit faced that exact argument in Dillon. I read it. The defendants came in and they said, we consent to being sued in arbitration for these claims. And the Fourth Circuit said that is insufficient to overcome the prospective waiver rule because we look at the contract on its face. It is not about what you will do in arbitration. It's about what the contract says will happen. That's my first response to that, Your Honor. Let me make one more point about that, which is even were the defendants to say to an arbitrator, hey, you know what? We're fine. Sue us under RICO. The arbitrator draws his or her power from the contract, not from some party's later stipulation about what he or she can or cannot do. And whether or not the parties would say to the arbitrator, we're fine with RICO, we're fine with any federal law, bring a class action, don't bring a class action, the arbitrator doesn't have the authority to undertake any decision or approach any cause of action that isn't explicitly permitted by the contract. Your basic position is that under the agreement itself that there cannot be brought federal claims. It's as simple as that in tribal law. Yes, it's as simple as that. And that is because it expressly invokes tribal law, and it binds an arbitrator's hands, in this case as it does everywhere else, from providing any remedies under federal statutory claims that are not made applicable for the cause of action at issue to tribes. Your position here is no different than the position of the Second Circuit. It's exactly the same, Your Honor. It's exactly the same. And let me just, because this really is, I think, the defendant's argument turns on this reading of the Indian Commerce Clause. So I just want to emphasize this point. Congress can abrogate sovereign immunity under the Indian Commerce Clause and provide a private cause of action against a tribe, but it has to do that explicitly. There's a clear statement rule. As an example, and we point this out, the Indian Gaming Regulations Act, Congress said tribes can be sued under this federal statute. Pursue it to our authority to regulate under the Indian Commerce Clause. If we had brought an IGRA claim, for instance, then this language that incorporates the Indian Commerce Clause would, I think, arguably permit that claim to move forward. But they have not done that for RICO. They have not done that for any of the voluntary laws that the defendants say they voluntarily comply with. And so as a result, the function of this contract is to prevent a consumer from being able to pursue statutory rights in arbitration. And that question, that's the single question that should drive this Court's analysis about what it thinks about enforceability. I thought those cases that you cited discounted the applicability of federal law. I'm sorry, Your Honor. The cases that you cited from the Second and the Fourth Circuit discounted the applicability of federal law. I don't think that's right. And I don't think that's right, Your Honor, because in the Dillon Contract, the Governing Law Clause explicitly stated it was governed by the Indian Commerce Clause. So it operated to pull in the same. It was different language from the language that's in this contract. Yes. We don't, just to be clear, they are not identical, but they operate in the same way. Well, that's the issue. Do they operate in the same way? I'm not sure that they do. I understand, Your Honor. I would submit that saying that the contract is governed by the Indian Commerce Clause operates no differently from saying that the contract is governed by tribal law and such federal law as is applicable under the Indian Commerce Clause. If your contract is governed by the clause, it carries with it all of the privileges, rights, and responsibilities that that clause confers. And the key right that the clause confers on tribes is not to be sued for statutory claims unless Congress explicitly abrogates that immunity. So what that clause does here is it takes off the table a consumer's right to bring any cause of action under those federal statutes. So you're saying that the clause, such federal law as applicable under the Indian Commerce Clause, are those laws in which Congress waived immunities. Is that what you're saying is covered by that? For anybody bringing a private claim, yes. And I would point the court to Bay Mills, the recent case out of the Supreme Court, that looked at this issue because the court there said exactly what I'm saying here, that what we're talking about when Congress legislates under the Indian Commerce Clause is how clear it needs to be to authorize an individual or a party to bring a private cause of action. So your view on laws of general applicability? They operate in the air. And Gingras makes this point. The Second Circuit made this point. In theory, the tribe can't go around violating federal law. But what matters is whether anybody can sue them. What matters for the prospective waiver rule is whether you can pursue a statutory claim. And you cannot sue the tribe under this clause unless Congress specifically abrogates that immunity. There's a second-level problem here, which, Judge Cowen, you touched on. And it is that not only have they tried to strip out those claims that they would otherwise face, but they have then tried to insulate that effort by restricting how and when anybody could actually come back and obtain judicial review. What about the waiver argument, though? Your adversary is raised? Your Honor, I don't think that is – the waiver doesn't operate in that way. We won below. This court can affirm for any basis in the record. But did you make the argument? Did you preserve the argument? That's a issue of preservation. I understand. But the issue is – I understand. I apologize, Your Honor. I understand the issue. But we argued that this contract was unenforceable. And the contract is unenforceable is the argument. And part of the reason it is unenforceable is not only because it prospectively waives these claims on the front end, but it insulates that effort on the back end by – Just so the record is clear, though, before the district court, was there an argument made challenging the review? Yes. We did not explicitly identify the review piece as comprising part of the prospective waiver. But I do not think that this bars – it doesn't bar this court, as a matter of appellate review, from affirming what the district court did, which was to invalidate this contract for any basis in the record. One of your adversaries argued, though, that it's not a waiver of basis – or maybe they both said it – sections 9 through 11 of the FAA, and that those standards of review would still apply. Now, I recognize the language of the contract doesn't say that, so what's your response to that? There is no way to square the language of the contract with that argument, Your Honor. And section 9 is very clear. Parties – they're not required to provide for judicial review in federal courts. They can choose the court for which they provide judicial review. But the contract controls who can review and how they review. And here, it's not just you can do tribal court or also as a benefit, and then also you can go to federal court. The contract specifically says – I'm just going to quote it – neither we nor this agreement are subject to the jurisdiction of any court unless so stated in the agreement. The only court that is identified in the agreement as being capable of exercising judicial review is a tribal court, and the only basis for exercising that review, the substantive protections, are only whether the arbitration award, ultimately what happened, was consistent with tribal law. You say there's no back-end review here. None. None. And so in all of the cases where the defendants have identified that courts have said, we don't want to – this is premature to do it at this stage. Let's wait to see what happens. In all of those cases, that decision was predicated on the availability of legitimate federal court back-end review with a contract that was at least arguably ambiguous about what it provided, and you have neither of those two criteria here. For the same reasons that the Second Circuit invalidated the contract and the Fourth Circuit, this court should side with those cases and affirm the district court's judgment below. Thank you. Three points. First of all, it is somewhat offensive to hear that just because multiple other circuits have invalidated agreements involving a completely different tribe and a completely different agreement and a completely different lender, there is no need to take a very close look at the language here. The agreements in those cases that plaintiffs cite overwhelmingly have a flaw that everyone agrees isn't present here, which was they all were about the Western Sky Lender, which conceivably had no arbitral form whatsoever for people to be able to use. And that is not a flaw that anyone sees in this particular case. There is no illusory form challenge. And so to paint the entire industry with a broad brush as not being able to make arbitration agreements or to not being able to use different language is, frankly, not the way that the Supreme Court has said that arbitration agreements are supposed to be looked at. You look at each one in a specific language and context. Second of all, it is simply wrong to suggest that any of the defendants here are going to be able to claim immunity in arbitration. Judge Schwartz, you asked about a case that was cited. It is not just us sort of making this up. The Oglala Sioux Eighth Circuit case, which both of us cite in our briefs, is very clear that whenever tribal entities are engaging in arbitration, that is, in fact, a waiver of immunity for purposes of the arbitration, for purposes of later review. The whole reason that we wish to preserve our immunity otherwise is because we obviously have arguments with respect to whether we are immune from being held in federal court for the regal claims if there is no arbitration. So let me ask you this. If your colleague, I think, said RICO could be pursued in arbitration, let's assume you have to stay in federal district court for these proceedings, right? Are you then going to say you can't sue us for RICO? Absolutely not. Okay. So you're not going to invoke an immunity or the RICO claim if you have to stay in federal district court. No. Correct? Sorry. If we're in federal district court, we're not going to arbitration. If we're not going to arbitration, then yes, we still have below the question of whether we are immune in federal court if there is no arbitration. But what we're accused of is saying we could just sort of do a bait and switch and say, oh, yes, RICO applies in arbitration, but then claim immunity. So you're saying we're going to waive our immunity if it's in arbitration. Yes. But we're going to seek to enforce our immunity if this case remains in an Article III court. Yes, and that makes sense, again, and I think shows that actually this arbitration agreement is giving borrowers something that they wouldn't have, which is tribal entities are normally entitled to claim immunity in federal courts, but the tribe and its entities have chosen in the form of arbitration to not assert that immunity. And, again, the Oglala Sioux Tribe case on the Eighth Circuit, I think, helps illustrate why that is legitimate. And just one quick third point, which is, again, when there is any ambiguity in the agreements here, when there's any sort of questions about what level of review is provided, whether there is any type of prospective waiver here, the Keyes Law is very clear, both from the Supreme Court and other circuits who have considered this, which is, if there's ambiguity, this goes to arbitration. And there's particularly ambiguity as to whether plaintiffs can, in fact, vindicate their RICO claims in arbitration. We have all said RICO is going to apply. The tribal law provides the substance of RICO arbitration, and that should be enough. And we urge you simply to look at this agreement on its own terms. Thank you for your argument. Your Honor, Mr. Wessler said that the agreement here has the same language as in Dillon, because one said governed by the Indian Commerce Clause versus our language. We did address that argument in our brief, even though they didn't raise Dillon, because that's the same language in Dillon that was in Jackson, the Seventh Circuit case. It is not the same thing to say you are governed by the Indian Commerce Clause as to say governed by all such federal laws as are applicable under the Indian Commerce Clause. I don't even know what it means, frankly, to say governed by the Indian Commerce Clause. The Indian Commerce Clause is not a source of rights that an arbitrator or a court could apply. It's a source of congressional power. It's like saying you're governed by the Post Office Clause or the Army and Navy Clause, some other clause in Article I, Section 8. Second point, I am not arguing here that this Court should rule for us because I have made any concession here or any concession was made below, anything like that. The Court wants to rule on that ground. Of course, I have no objection. But I submit that the contract makes clear that there's no prospective waiver violation or at a minimum there's ambiguity, in which case arbitration has to be compelled. Mr. Wessler cited Bay Mills. That's not cited in their briefs. If the Court thinks there's anything to that, I would request an opportunity to brief it in supplemental briefing. But it's not an argument they've made before. I submit that is waived. Regarding back-end review, he addressed only one of the three arguments that I made. He said it wasn't waived because they argued below that the contract is unenforceable. That is way too broad. That is not what this Court's cases say. That is not what the Supreme Court's cases say. Look at page 28 of our reply brief. We cite this Court's and the Supreme Court's cases on this point. He didn't even speak to why there has to be federal court review. It's like appealing to uncertainty or animus about a tribal court. People can agree all the time to go to the courts of Alaska, courts of Alberta, courts of Sweden, courts of a tribe. Tribal courts, like all those other courts, as long as they are allowed and required to apply federal law, there is no prospective waiver violation. Any simple appeal to uncertainty or animus about a tribal court should promptly be set aside. And, of course, he didn't speak to the fact that here we have a federal court, the Court of Indian Offenses. If you require a federal court, you've got one here. This Court should reverse the verdict. Your arguments. Thank you all for your helpful briefing and arguments. We're going to ask the parties to split the cost of the transcript for today's proceeding. So if you could arrange for that with the court card, I'd appreciate it. Okay, thank you. Have a good rest of the day, everyone. Thank you. Sorry. Actually, yes. I'm ready. Okay. Thank you. Thank you.